[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14523

_____

D. C. Docket No. 07-61078-CV-SH

JAMES L. BUTLER, JR.,
BARI L. BUTLER,

Plaintiffs-Appellees,

versus

SUKHOI COMPANY,
UNITED AIRCRAFT MANUFACTURING CORP.,
IRKUT CORPORATION,
SUKHOI CIVIL AIRCRAFT,
RUSSIAN FEDERATION,

Defendants-Appellants,

SUKHOI DESIGN BUREAU,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 19, 2009)

Before DUBINA, Chief Judge, BIRCH and WILSON, Circuit Judges.

BIRCH, Circuit Judge:

Sukhoi Company ("Sukhoi"), United Aircraft Manufacturing Corporation ("UAC"), Irkut Corporation ("Irkut"), Sukhoi Civil Aircraft ("SCA"), and The Russian Federation ("Russia") (collectively, "appellants") appeal the order of the district court denying their motion to dismiss the complaint filed by appellees James Butler and his wife, Bari Butler (hereinafter "the Butlers"), in which the Butlers sought to enforce a default judgment entered in their favor in a previous cause of action against appellants' alleged predecessor-in-interest, Sukhoi Design Bureau ("SDB"). Because the district court lacked subject matter jurisdiction over the Butlers' claims, we REVERSE and REMAND to the district court with instructions to dismiss the case.

## I. BACKGROUND

The Butlers filed suit (hereinafter "Butler I") in 2003 in the United States District Court for the Southern District of Florida against SDB and Advanced Sukhoi Technologies[1] seeking damages for injuries James Butler sustained when a Sukhoi SU-29 aircraft he was piloting crashed in Broward County, Florida as a

---

[1] In its motion to dismiss the Butler I complaint, SDB stated that it was a company separate and independent from "Advanced Sukhoi Technologies," which, according to SDB, was operating under the name "Advanced Technologies for Aircraft Manufacturing" at the time of the lawsuit.

result of defects in the aircraft.  The district court denied SDB's motion to dismiss for lack of personal jurisdiction and SDB answered the complaint.  SDB admitted that it was a subject of the Russian Federation and asserted various affirmative defenses, including lack of personal jurisdiction and failure to state a claim, but did not invoke immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, et seq.  After SDB failed to respond to discovery or to comply with the district court's order compelling discovery, the Butlers filed a motion for default judgment, which the district court granted.  Following a jury trial on damages, the district court entered an amended final judgment, in accordance with the jury's verdict, ordering SDB to pay damages to the Butlers in the amount of $3,592,500 plus post-judgment interest.

On 2 August 2007, the Butlers filed the instant action (hereinafter "Butler II") against SDB, naming as additional defendants Sukhoi, UAC, Irkut, SCA, and Russia.[2]  In their complaint, the Butlers alleged that appellants were a foreign state and/or instrumentalities or agencies of a foreign state not entitled to immunity under the FSIA and sought a declaration that appellants – none of whom were parties in Butler I – were jointly and severally liable for the Butler I judgment as

_____

[2] Though named as a defendant, SDB has not appeared in Butler II.

3

successors in interest to and/or alter-egos of SDB.[3]  Appellants filed a motion to dismiss, asserting immunity from liability and execution under the FSIA.  They argued that the complaint's allegations were insufficient as a matter of law to establish the court's subject matter jurisdiction under the FSIA.[4]

The Butlers responded that SDB waived immunity from suit by failing to invoke the protections of the FSIA in Butler I.  They argued additionally that they were merely seeking to execute a judgment entered against SDB and that Rule 69 of the Federal Rules of Civil Procedure allows for enforcement of such judgments

---

[3] Specifically, the complaint alleged that: (1) Sukhoi is a Russian corporation wholly owned by Russia, an agency and instrumentality of Russia, and Russia's alter-ego; (2) SDB is a Russian corporation owned 50% + 1 share by Sukhoi Company and is the alter-ego of Russia and Sukhoi Company; (3) Irkut is a Russian corporation owned in part by Sukhoi; (4) SCA is a Russian company owned 86.84% by Sukhoi; (5) UAC is a Russian corporation that was organized and incorporated by a decree of Russian president Vladimir Putin "to maintain the scientific-industrial potential of Russia's aircraft manufacturing complex, and to ensure the country's security and defense capabilities," and is controlled by Russia; (6) all other corporate defendants merged into UAC as the successor in interest to Sukhoi Company, SDB, Irkut, and SCA; and (7) UAC and Russia are alter-egos of one another.  R1-1 at 2-4 (internal quotation marks omitted).

[4] Appellants contended additionally that the complaint was due to be dismissed because: (1) the Butler I judgment was entered by default and in accordance with a jury verdict and thus unenforceable under 28 U.S.C. §§ 1608(e) and 1330(a), respectively; (2) the complaint actually alleged a basis for absolute immunity under 28 U.S.C. § 1611(b)(2) by stating that appellants' bank accounts were used to facilitate international civil and military aircraft transactions; (3) the court lacked personal jurisdiction due to improper service of process under the FSIA and, even if the FSIA were inapplicable, the court lacked personal jurisdiction under Florida's long arm statute; (4) venue was improper under the FSIA because the complaint's sole claim was that appellants were alter-egos of one another and thus any acts or omissions upon which the claim was based could only have occurred, if at all, in Russia; and (5) the complaint failed to state a claim under Rule 12(b)(6).  Finally, appellants asserted that summary judgment was appropriate because the complaint asserted only a conclusory alter-ego claim and thus failed to raise genuine issues of material fact for discovery or trial.

4

in federal courts. They contended that they were entitled to limited jurisdictional discovery as to the alter-ego basis for subject matter jurisdiction and to discovery in aid of execution as to the location of the judgment debtors' assets. The Butlers did not, however, identify any specific undiscovered facts that were necessary to make an immunity determination.

The district court denied appellants' motion on 29 July 2008, finding that it would be "premature" to dismiss the complaint because the Butlers were entitled to discovery on the "jurisdictional issues" raised by appellants. R1-41. This appeal followed.

## II. DISCUSSION

We have jurisdiction under 28 U.S.C. § 1291 only over appeals from "final decisions" of the district courts. W.R. Huff Asset Mgmt Co. v. Kohlberg, Kravis, Roberts & Co., 566 F.3d 979, 984 (11th Cir. 2009) (quotation marks and citation omitted). "[A] district court order is considered final and appealable only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Id. Because the district court's order denying appellants' motion to dismiss did not end the litigation on the merits, we must, as an initial matter, determine whether we have jurisdiction over this appeal.

It is well-settled that a court of appeals has jurisdiction over interlocutory

orders denying claims of immunity under the FSIA.  See O'Bryan v. Holy See, 556 F.3d 361, 372 (6th Cir. 2009) (noting that because sovereign immunity is immunity from trial, not merely a defense to liability, the denial of a claim of sovereign immunity is immediately appealable as a final decision under 28 U.S.C. § 1291); S & Davis Int'l, Inc. v. Republic of Yemen, 218 F.3d 1292, 1295, 1297 (11th Cir. 2000).  Inasmuch as the order on appeal required appellants to answer the complaint and called for discovery, it denied them immunity from suit under the FSIA.  See McMahon v. Presidential Airways, Inc., 502 F.3d 1331, 1339 (11th Cir. 2007) (noting that "immunity from suit entails a right to be free from the burdens of litigation"); Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 849 (5th Cir. 2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation."). Accordingly, we have jurisdiction over appellants' assertion of immunity under the FSIA, notwithstanding the lack of a final judgment in this case.  We now turn to the merits.

Appellants argue that the district court erred in denying their motion to dismiss and abused its discretion in ordering jurisdictional discovery because the Butlers' complaint failed to allege a basis for subject matter jurisdiction.  The Butlers, on the other hand, contend that the district court correctly denied the

6

motion because they were entitled to limited jurisdictional discovery in order to further define appellants' alter-ego relationship with SDB. We conclude that, even accepting as true the Butlers' allegations that appellants are alter-egos of one another and of SDB, they are insufficient as a matter of law to demonstrate the existence of subject matter jurisdiction.

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in [United States] courts." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434, 109 S. Ct. 683, 688 (1989); see also Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1543 (11th Cir. 1993) (noting that FSIA is "[t]he only possible source of federal jurisdiction in suits against corporations owned by foreign states"). Under the FSIA, foreign states and their agencies and/or instrumentalities[5] are immune from suit in the United States *unless* an FSIA statutory exception applies.[6] See 28 U.S.C. §§ 1603, 1604, 1605; Aquamar, S.A. v.

---

[5] A "foreign state" under the FSIA includes an "agency or instrumentality of a foreign state," defined as "a separate legal person, corporate or otherwise, . . . a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(a), (b); see S & Davis Int'l, 218 F.3d at 1300. Accordingly, any such agency or instrumentality of a foreign state also enjoys immunity from suit and execution under the FSIA. See Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc., 183 F.3d 1277, 1283 (11th Cir. 1999). Appellants conceded for purposes of their motion to dismiss and on appeal that they are instrumentalities of Russia.

[6] The FSIA does not immunize foreign states from suit cases in which: (1) "the foreign state has waived its immunity either explicitly or by implication"; (2) "the action is based upon a commercial activity carried on in the United States by the foreign state"; (3) "rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried

Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1290 (11th Cir. 1999). If none of the exceptions applies, then the district court lacks subject matter jurisdiction over the plaintiff's claims. Mwani v. Bin Laden, 417 F.3d 1, 15 (D.C. Cir. 2005) (citing 28 U.S.C. § 1604). Conversely, "[i]f an exception does apply, the district court has jurisdiction." Id. (citing 28 U.S.C. § 1330(a)[7]). Thus, in order to establish subject matter jurisdiction under the FSIA, the plaintiff must overcome the presumption that the foreign state is immune from suit by producing evidence that "the conduct which forms the basis of [the] complaint falls within one of the statutorily defined exceptions." S & Davis Int'l, 218 F.3d at 1300; see also In re

---

on in the United States by the foreign state;" (4) "rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue"; (5) "money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state"; (6) "the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship . . . concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate"; (7) "a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state"; (8) an action is brought to foreclose a preferred mortgage. 28 U.S.C. § 1605; see also 28 U.S.C. § 1605A (addressing terrorist exception to jurisdictional immunity); § 1607 (addressing counterclaims against foreign states that bring actions in the United States courts); §§ 1610-11 (setting forth exceptions to immunity from attachment or execution).

[7] Section 1330(a) provides: "The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a).

8

Terrorist Attacks on September 11, 2001, 538 F.3d 71, 80 (2d Cir. 2008) (plaintiff has burden of producing evidence showing that, under exceptions to the FSIA, immunity should not be granted). Whether the plaintiff has satisfied his burden of production in this regard is determined by looking at "the allegations in the complaint [and] the undisputed facts, if any, placed before the court by the parties." In re Terrorist Attacks, 538 F.3d at 80 (quotation marks, alterations, and citation omitted). Once the plaintiff demonstrates that one of the statutory exceptions to FSIA immunity applies, the burden then shifts to the defendant to prove, by a preponderance of the evidence, that the plaintiff's claims do not fall within that exception. See S & Davis Int'l, 218 F.3d at 1300; Aquamar, 179 F.3d at 1290; Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1378 (5th Cir. Unit B 1980).

Because the Butlers sought to invoke the jurisdiction of the United States courts to enter a new judgment in a separate cause of action against appellants, they bore the burden of presenting a prima facie case that jurisdiction existed.[8] See S & Davis Int'l, 218 F.3d at 1300. Where, as here, the party asserting immunity under the FSIA does not contest the alleged jurisdictional facts, but rather,

---

[8] Although a defendant challenging subject matter jurisdiction under the FSIA has the initial burden of presenting a prima facie case that it is a foreign state, see In re Terrorist Attacks, 538 F.3d at 80, the appellants' status as "foreign states" under the FSIA was uncontested in this case.

challenges their legal adequacy, we review de novo the complaint's jurisdictional allegations to determine whether they were sufficient to eliminate the appellants' presumptive immunity. See Mwani, 417 F.3d at 15-16 (where foreign sovereign did not expressly concede plaintiffs' factual allegations but argued that the allegations, even if substantiated, were insufficient to trigger FSIA exception, sovereign's argument was a challenge to the legal sufficiency of the allegations subject to de novo review); see also Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997) (noting that a facial challenge to the legal sufficiency of a claim or defense, unlike a denial of the complaint's factual allegations, "always presents a purely legal question").

The complaint in this case pleads the FSIA as the district court's basis for subject matter jurisdiction, but fails to specifically invoke any of the FSIA's statutory exceptions. The only "conduct" alleged in the complaint is that appellants and SDB are alter-egos. We agree with appellants that this conduct is insufficient to divest appellants of their sovereign immunity because, even if substantiated through discovery, it does not bring the claim within one of one the statutorily-enumerated exceptions either to pre-judgment or post-judgment immunity under the FSIA. See Mwani, 417 F.3d at 17. Moreover, although the complaint makes the bald assertion that jurisdiction exists under § 1605 because

10

the action "involves a foreign state and instrumentalities or agencies of a foreign state not entitled to immunity under 28 U.S.C. §§ 1603, et seq. of the [FSIA] and under FRCP 69(a) to enforce its own judgments," this is a legal conclusion that we need not accept as true. R1-1 at 4; see O'Bryan, 556 F.3d at 376 (where defendant asserts a facial attack on the subject-matter jurisdiction alleged in the complaint, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" (quotation marks and citation omitted)); S & Davis Int'l, 218 F.3d at 1298. Inasmuch as the complaint was insufficient as a matter of law to establish a prima facie case that the district court had jurisdiction, the district court abused its discretion in allowing the case to proceed and granting discovery on the jurisdictional issue. See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1280-81 (11th Cir. 2009) (reviewing district court's decision to allow jurisdictional discovery for an abuse of discretion); see, e.g., In re Terrorist Attacks, 538 F.3d at 96 (finding no error in district court's denial of jurisdictional discovery against foreign state where plaintiffs failed to establish a prima facie case that the district court had jurisdiction over defendants); Mwani, 417 F.3d at 17 (finding no error in district court's denial of jurisdictional discovery where, even assuming defendant/sovereign engaged in conduct alleged in the complaint, commercial activity exception to FSIA would not apply as a

11

matter of law).

Further, we note that the principles of comity underlying the FSIA require the district court, when deciding whether or not to allow jurisdictional discovery from a foreign sovereign, to balance the need for "discovery to substantiate exceptions to statutory foreign sovereign immunity" against the need to "protect[] a sovereign's or sovereign agency's legitimate claim to immunity from discovery." First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998) (quotation marks and citation omitted). Such an analysis serves to ensure that jurisdictional discovery is "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." Id. (quotation marks and citation omitted); In re Papandreou, 139 F.3d 247, 253 (D.C. Cir. 1998) ("[A] district court authorizing discovery to determine whether immunity bars jurisdiction must proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure."); Federal Ins. Co. v. Richard I. Rubin & Co., Inc., 12 F.3d 1270, 1284 n.11 (3d Cir. 1993) ("[D]iscovery and fact-finding should be limited to the essentials necessary to determining the preliminary question of jurisdiction." (quotation marks and citation omitted)).

As previously noted, the complaint in this case fails to allege an FSIA

statutory exception to sovereign immunity that could be subjected to verification through discovery. The Butlers simply assert that they are entitled to further discovery regarding appellants' and SDB's alter-ego status. Given that appellants conceded for purposes of their motion to dismiss that they were alter-egos of SDB, we are unable to see what specific facts additional discovery might reveal that would be crucial to the court's immunity determination. See Goodman Holdings v. Rafidain Bank, 26 F.3d 1143, 1147 (D.C. Cir. 1994) (affirming district court's dismissal for lack of jurisdiction in FSIA case where additional discovery was unlikely to produce facts affecting court's jurisdictional analysis); see also America West Airlines, Inc. v. GPA Group, Ltd., 877 F.2d 793, 801 (9th Cir. 1989) (where discovery sought was unlikely to substantiate plaintiff's assertion of jurisdiction, district court did not abuse its discretion in deciding the jurisdictional issue without allowing additional time for discovery); Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) (noting that a district court's refusal to allow discovery to determine whether subject matter jurisdiction exists "is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction"). Because the complaint's alter-ego allegations, if proven through additional discovery, would not demonstrate a basis for jurisdiction in any event, we have little difficulty

13

concluding that the need to protect appellants' claim to immunity from discovery greatly outweighed any competing need for further discovery.  See First City, 150 F.3d at 176; Kaylor v. Fields, 661 F.2d 1177, 1184 (8th Cir. 1981) (noting that the purpose of discovery is not "to enable a plaintiff to make a case when his complaint has failed to state a claim").  In sum, requiring Russia and its instrumentalities to engage in the burdens and costs of responding to discovery, especially when the jurisdictional question in this case may be resolved simply by reference to the undisputed allegations in the complaint, would "frustrate the significance and benefit of entitlement to immunity from suit" under the FSIA. Belhas v. Ya'alon, 515 F.3d 1279, 1290 (D.C. Cir. 2008) (quotation marks and citation omitted).

### III. CONCLUSION

Appellants appeal the order of the district court denying their motion to dismiss and ordering them to answer the Butlers' complaint.  Because the complaint failed to allege any facts that, if verified, would demonstrate the applicability of a statutorily-enumerated exception to foreign sovereign immunity under the FSIA, it was plainly insufficient to establish subject matter jurisdiction. Accordingly, we REVERSE the order of the district court and REMAND to the district court with instructions to dismiss the case.

**REVERSED and REMANDED.**